[Civil No. 3753. Filed June 29, 1936.]

[58 Pac. (2d) 1249.]

COLUMBUS P. GIRAGI and GEORGE A. GIRAGI, Copartners, Doing Business Under the Firm Name and Style of ''Giragi Brothers, Publishers,'' and SOUTHSIDE PUBLISHING COMPANY, a Corporation, Appellants, v. THAD M. MOORE, FRANK LUKE and D. C. O'NEIL, as Members of and Constituting the State Tax Commission of Arizona, Appellees.

Messrs. Armstrong, Kramer, Morrison & Roche and Messrs. Sutter & Gentry, for Appellants.

Mr. John L. Sullivan, Attorney General, and Mr. A. I. Winsett, Assistant Attorney General, for Appellees.

McALISTER, J.—Columbus P. Giragi and George A. Giragi, copartners, doing business under the firm name and style of "Giragi Brothers, Publishers," and the Southside Publishing Company, a corporation, brought an action against Thad M. Moore, Frank Luke and D. C. O'Neil, as members of the State Tax Commission of Arizona, in which they allege that a controversy exists between the plaintiffs and the defendants as to the construction of paragraph 7, subdivision (c) of section 2 of chapter 77 of the Laws of 1935, commonly referred to as "The Excise Revenue Act of 1935" and that a declaratory judgment will terminate it and make clear the rights and duties of the parties thereunder; that the portion of this section which gives rise to the controversy reads as follows:

"Sec. 2. *Imposition of the Tax.* From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission for the purpose of raising public money to be used in liquidating the outstanding obligations of the state government and to aid in defraying the necessary and ordinary expenses of the same and to reduce or eliminate the annual tax levy on property for state purposes and to reduce the levy on property for public school education to the extent hereinafter provided, annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule: . . .

"(c) At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses: . . .

"7. Publication of newspapers, magazines or other periodicals and publications, when published within

this state including the gross income derived from subscriptions.''

It appears from the complaint that the contentions of the respective parties as to the meaning of this provision are these: The defendants insist that the sale of advertisements and notices are embraced within the meaning of the term ''publication of newspapers'' and, hence, that paragraph 7 imposes on the plaintiffs and requires them to pay a tax equal to one per cent. ''of the gross proceeds of sales or gross income'' derived by them from that source; the plaintiffs contend (1) that neither ''gross proceeds of sales'' nor ''gross income'' derived from their newspapers are taxable under this provision because the term ''publication of newspapers'' includes only circulation and distribution of the newspapers and does not embrace the sale of advertisements and notices; (2) that it was intended that the term ''publication of newspapers'' should not include advertisements and notices is shown by the fact that as the Excise Revenue Act of 1935, hereafter referred to as the Act, was introduced in the legislature, the expression, ''or by the sale of advertisements and notices,'' appeared in paragraph 7, subdivision (c), section 2 thereof, after the word, ''subscriptions,'' but that this language was stricken from it by amendment on its way through the legislature and before it was finally passed and approved by the Governor; (3) that the legislature, by expressly including in said paragraph 7 ''the gross income derived from subscriptions,'' excluded the imposition of a tax on advertisements and notices in their newspapers.

It is further alleged that the defendants have demanded that they file with the commission amended returns on business transacted by them during May, June and July, 1935, and include therein the gross

proceeds derived from advertisements and notices and that they pay a tax thereon equal to one per cent. thereof; that unless they do make such returns and pay said tax, the defendants threaten to cause the books of the plaintiffs to be audited, to levy said tax, and, if not paid, to cause to be issued warrants of distraint ordering the sheriffs of the counties where the defendants are doing business to seize and sell the plaintiffs' property in satisfaction of said tax.

In their answer the defendants admit that the complaint sets up correctly the meaning both parties attach to paragraph 7, subdivision (c) of section 2 of said chapter 77, but they deny the correctness of plaintiffs' contentions and the allegations setting forth the manner in which paragraph 7 took final form in the legislature, averring that it makes no difference how it read when the act was introduced, for the reason that its form then has no bearing on the intention of the legislature in passing it in the shape in which it was finally adopted and became a law.

Following the filing of the answer the plaintiffs moved for judgment on the pleadings and the court denied their motion but held paragraph 7, subdivision (c) of section 2, sufficiently broad to cover a tax on advertisements and notices and entered judgment for the defendants. Plaintiffs, believing the court's construction of the language of the act erroneous, have brought the matter here for review.

The plaintiffs have made three assignments but have advanced seven or eight propositions of law in support of their view of the one real question presented by the appeal and that is, whether chapter 77 imposes a tax on the gross income of advertisements and notices appearing in the plaintiffs' newspapers, it being conceded that it applies to receipts from sub-

scriptions. The act provides that after it becomes effective there is levied and shall be collected annual privilege taxes in an amount equal to one per cent. of the gross proceeds of sales or gross income from the business of every person engaging in the business of "publication of newspapers, magazines or other periodicals and publications, when published within this state including the gross income derived from subscriptions." This language places a tax on the gross income from the business of publishing newspapers in this state but the contention of the plaintiffs is that by the term "publication of newspapers," as here used, reference is had to the issuance and circulation of the paper and, therefore, to the gross income from subscriptions, and that there was no intention whatever to tax the income from the publication of advertisements and notices. As a basis for this contention they call attention to the definition of the words, "publication," "publish" and "circulate," stating that it appears therefrom "that 'publication of newspapers' means the same thing as putting the newspapers into circulation, and 'circulation' includes and covers subscriptions," and from this draw the conclusion that this provision imposes a tax only on the amounts derived from the sale of newspapers by subscriptions for stated periods, by street sales or by sales to news-stands.

This construction of the word "publication," as here used, is entirely too narrow and wholly out of line with its context and the purpose of the act in which it appears. Keeping in mind that the Excise Revenue Act was passed to raise revenue to liquidate "the outstanding obligations of the state government and to aid in defraying the necessary and ordinary expenses of the same and to reduce or eliminate the annual tax levy on property for state purposes and

to reduce the levy on property for public school education" and that to bring this about it imposes a tax "equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state" in various businesses, among which is that of the "publication of newspapers," it becomes perfectly clear that the word "publication" was employed here to designate what it ordinarily implies when used in connection with newspapers, and that is the complete process of producing the paper and placing it in the hands of its readers. It does not mean merely that part of this process that puts the paper into circulation, which includes and covers subscriptions, but embraces every step in the manufacture of the paper, from the purchase of the material on which the printed matter appears to the circulation of the completed product. When it is said that a person is engaged in the publication of a newspaper, the impression is immediately conveyed that he is doing what is necessary to produce the finished article and place it in the hands of his subscribers, not that he is merely circulating it. Both processes are involved in the business of publishing a newspaper, one as much so as the other, for each would be useless without the other.

If there existed any doubt as to whether the word, "publication," in the expression, "publication of newspapers," means merely the circulation of the paper or the entire process or activity of getting it out, it is completely removed by the language of paragraph 7, which reads:

"7. Publication of newspapers, magazines or other periodicals and publications, when published within this state *including the gross income derived from subscriptions.*" (Italics ours.)

The use of the italicized portions of this paragraph, following the language imposing upon every person engaged in the business (among others) of the publication of newspapers a tax equal to one per cent. of the gross income therefrom, shows conclusively that in designating the income it was intended should be used as a basis for the tax on persons engaged in the business of publishing newspapers, the legislature had in mind not merely the income from subscriptions but also that from some other source. The word, "including," as here used, is susceptible of no other meaning. In fact, it negatives the idea that the income from subscriptions only should form the basis of the tax, because it conveys the thought that the income from that source shall, in connection with the income derived from some other source, constitute the gross income upon which the tax is to be paid. And, inasmuch as a newspaper has only two sources of income, subscriptions and advertisements, the inevitable conclusion is that the income with which that from subscriptions is to be included to form the total gross income subject to taxation, is that derived from its only other source of income, which is the publication of advertisements.

Besides, it hardly seems reasonable that in passing a revenue measure imposing upon every person engaging in the businesses specifically enumerated a tax of a certain percentage on the gross proceeds of sales or gross income therefrom, the legislature intended to exempt from the tax the principal income from any one of them, especially that portion of it arising, as in the case of the publication of newspapers, from the purely commercial phase of its activities. Such a view nullifies in large measure the purpose of the revenue act, which is to collect a tax

of a certain percentage on the gross income of the businesses named therein.

To strengthen their contention that the legislature did not intend to tax the income from advertisements the plaintiffs call attention to the fact that paragraph 7 specifically mentions the gross income from subscriptions as taxable, and claim that under the well-established rule of *expressio unius est exclusio alterius* this has the effect of excluding from the tax the income from other phases of the business of publishing a newspaper. In view of the fact, however, that the word ''including,'' though a part of the expression specifically embracing the gross income derived from subscriptions, implies necessarily an income from some other source than subscriptions and by virtue of its own meaning includes rather than excludes, this rule has no application. And it might be suggested that the specific mention of the gross income from subscriptions is wholly without effect anyway if the contention of the plaintiffs that the word ''publication'' in paragraph 7 means merely ''circulation'' and ''circulation'' embraces subscriptions, because, in that event, it amounts simply to a repetition of the expression ''gross income derived from subscriptions'' and is not in effect a specific mention thereof for the first time. In other words, it does not include something of less importance that may not have been covered in the first expression.

While it is clear that this expression could not have been added to paragraph 7 to include income from subscriptions and at the same time exclude that from other sources, it is not plain just what the legislature did have in mind by it, unless it be, as suggested by the trial court, that it believed that ''subscriptions were not a part of the business of 'the publication of newspapers,' but rather something the

lay mind thinks of as preceding the publication, and out of an abundance of precaution added this clause to be sure that all income of a newspaper would be taxed.'' Or it may have thought that the income from subscriptions represents such a small percentage as well as the less commercial phase of the business that it might be overlooked and that naming it specifically would emphasize the fact that, notwithstanding these facts, it also should be included in and not omitted from the income intended to form the basis of the tax.

The plaintiffs suggest still another reason, in fact, argue it strongly and principally, why there is no doubt but that the legislature intended to exclude from taxation the income from any other source than subscriptions, and it is this: Paragraph 7, as introduced in the legislature, contained, after the word, ''subscriptions,'' the expression, ''or by the sale of advertisements and notices,'' but before final passage and approval of the act by the Governor this language was stricken from it by amendment. The plaintiffs contend that this shows that it was not the purpose of the legislature to impose a tax on the income from advertisements and notices and that to construe paragraph 7 to mean that it does is, in effect, restoring to the act something the law-making body specifically and definitely eliminated from it. There was no evidence introduced on this point but it is urged that the facts appear in the Senate and House Journals of the Twelfth Legislature and that the court should take judicial notice of them, and in support of this proposition they cite a great number of authorities, among them the following: *McAdams* v. *Henley,* 169 Ark. 97, 273 S. W. 355, 41 A. L. R. 629; *French* v. *Senate of California,* 146 Cal. 604, 80 Pac. 1031, 2 Ann. Cas. 756, 69 L. R. A. 556; *Wilson*

v. *Atwood,* 270 Mich. 317, 258 N. W. 773; *Ritchie* v. *Richards,* 14 Utah 345, 47 Pac. 670, 676; *State* v. *P. Lorillard Co.,* 181 Wis. 347, 193 N. W. 613, 622. We are satisfied that the court may, when it becomes necessary to determine whether an act has been enacted in conformity with the Constitution, take judicial notice of the pertinent facts appearing in these journals, because they are public records required by the Constitution to be kept. Section 10, pt. 2, art. 4, State Constitution.

However, notwithstanding its right to notice the contents of these journals judicially, for the purpose mentioned, it is clear that there was no occasion for its exercise in this instance. The language finally employed by the legislature leaves no doubt as to its meaning and, this being true, it is wholly immaterial what it contained when introduced or how or at what stage of its trip through the legislative body it was amended or changed so as to express the clear and unequivocal meaning it now has. The fact that the words, ''or by the sale of advertisements and notices'' were a part of the bill as introduced but were eliminated from it before it was passed means nothing more than that it was stricken by amendment at some step of its passage through the legislature. What guided that body in taking this action no one knows. It could have felt, and perhaps did feel, that the provision was clear without it and that to add language to make certain that which was already without doubt was wholly unnecessary. If, by omitting this language, the legislature really intended to exclude from taxation the income from advertisements, it failed to accomplish its purpose, because the language remaining after this was done is susceptible of no other construction than that a tax equal to one per cent. of the gross proceeds of sales or gross income

from the business of publishing a newspaper is imposed upon every person engaged in that activity, and that the term, "publication of newspapers," includes every step or process necessary to produce the finished article, from the purchase of the material upon which the printed matter appears to the placing of the printed paper in the hands of its subscribers.

Hence, it is our view that the trial court was correct in upholding the construction of paragraph 7 contended for by the defendants. The judgment is, therefore, affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.