**TAMPA TIMES COMPANY, a corporation, and The Tribune Company, a corporation v. CITY OF TAMPA, a municipal corporation**

29 So. (2nd) 368                          January Term, 1947
February 18, 1947                                      En Banc
Rehearing denied March 24, 1947

*McKay, Macfarlane, Jackson & Ferguson, Howard P. Macfarlane* and *T. Paine Kelly, Jr.,* for appellants.

*Karl E. Whitaker* and *Ralph A. Marsicano,* for appellee.

ADAMS, J.:

The Tampa Times Company and The Tribune Company filed a bill in equity alleging that they are the publishers of daily newspapers in the City of Tampa with a combined circulation in excess of one hundred twenty thousand daily copies. They allege that they are institutions known as "the press" within the meaning and contemplation of the Federal and State Constitutions. Their prime objective and purpose is to collect and disseminate news of general interest and benefit to the public.

The bill sets forth pertinent parts of two ordinances enacted by the City of Tampa which, it is claimed, violate certain rights vouchsafed to appellants under both the Federal and State Constitutions guaranteeing freedom of the press. The pertinent parts of Ordinance No. 964-A read:

" 'Section 1. That an annual license tax, be and the same is hereby levied upon and shall be collected from every person, firm, or corporation, exercising the privileges for carrying on or engaging in the businesses or occupations hereinafter specifically enumerated and in the amounts as follows:

" '(a) Newspapers, magazines, or other periodicals or publications published within the City of Tampa, on gross receipts from all sales and advertising, shall pay the same license tax as now provided for merchants by paragraphs (B) and (C) of Sub-Section 62 of Section 1 of Ordinance No. 721-A of the City of Tampa, as amended by Section 2 of Ordinance No. 897-A; . . .' "

" '(B) Merchants—Retail: The license tax on every retail merchant, whether any other license tax is required by any sub-section of this ordinance or not, shall be measured by the amount of gross sales made by such merchant and shall be figured and arrived at as follows: Returns shall be made to the City Tax Collector showing the amount of gross sales for the 12 months period ending September 30th, immediately preceding the license year, or as otherwise provided

for herein, and on the first $3,000.00 or less the license tax shall be . . . $10.00.

" 'On each $1,000.00 of gross sales or major fraction thereof above $3,000.00 . . . 1.00.

" '(C) Merchants—Wholesale: The license tax on every wholesale merchant, whether any other license tax is required by any sub-section of this ordinance or not, shall be measured by the amount of gross sales made by such merchant and shall be figured and arrived at as follows: Returns shall be made by each wholesale merchant to the City Tax Collector showing the amount of gross sales for the 12 months period ending September 30th, immediately preceding the license year, or as otherwise provided for herein, and on each $1,000.00 of gross sales so made the license tax shall be . . . 30. The minimum amount of tax shall be . . . 10.00' ".

One provision of Section 3 of Ordinance No. 721-A reads:

" 'And the Tax Collector is authorized to propound interrogatories and to furnish forms for the filing of the returns and to require the giving of any information necessary to enable him or his authorized deputy to determine the proper amount of license due, and the Tax Collector or his authorized deputy is authorized to make such investigation and inspection of the place of business and records of the person required to pay a license as he may determine necessary in order to verify any returns or determine the proper license amount . . .' "

The bill alleges that almost all of appellants' income is derived from sales of their papers to the general public and the sale of advertising space; that the latter income is largely determined by the volume of circulation and the natural effect of the ordinances is to illegally restrain the press. It is further asserted that the effect of the last quoted ordinance is to curtail the flow of information of a public nature to the press.

The bill prayed that the ordinances be declared void in so far as they applied to appellants.

On motion the bill was dismissed and appellants appeal.

The first amendment of the Constitution of the United States reads:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; of abridging the freedom of speech, or of the press; or the right of the people peaceable to assemble, and to petition the Government for a redress of grievances."

The pertinent part of Section 13 of the Declaration of Rights, Florida Constitution reads:

"Every person may fully speak and write his sentiments on all subjects being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech, or of the press . . ."

Appellants rely in a large measure on Grosjean v. American Press Company, 297 U.S. 233, 80 L. Ed. 660; Murdock v. Pennsylvania, 319 U.S. 105, 63 S. Ct. 870, 87 L. Ed. 1292, 146 A.L.R. 81; Follett v. Town of McCormich, 321 U.S. 573, 64 S. Ct. 717, 88 L. Ed. 938, 152 A.L.R. 317; Bridges v. California, 314 U.S. 252, 62 S. Ct. 190, 86 L. Ed. 192; Lovell v. Griffin, 303 U.S. 444, 58 S. Ct. 666, 82 L. Ed. 949; City of Tampa v. Tampa Times Company, 153 Fla. 709, 15 So. 2d. 612.

The City relies mostly upon the cases, Arizona Publishing Company v. O'Neil et al, 304 U.S. 543, 58 S. Ct. 950, 82 L. Ed. 1518; Giragi v. Moore, 48 Ariz. 33, 58 Pac. 2d. 1249; 110 A.L.R. 314; On rehearing Giragi v. Moore, 49 Ariz. 74, 64 Pac. 2d. 819, 110 A.L.R. 314; Arizona Pub. Co. v. O'Neil et al, D. C., 22 F. Supp. 117; Commonwealth of Massachusetts v. Boston Transcript Co., 249 Mass. 477, 144 N.E. 400, 35 A.L.R. 1; Cooley on Taxation, Vol. 4, 4th Ed., 1707, page 3421.

The ordinance in question is for revenue. There is no claim that it is arbitrary or harsh in nature. The single question then is whether a newspaper is immune from the burden of taxation to maintain government. We might begin our consideration by referring to the case where these same appellants were the victors over the same defendant in the case of City of Tampa v. Tampa Times, 153 Fla. 709, 15 So. 2d. 612, involving a different ordinance. There we held the ordinance in question was bad because the license tax was graduated according to volume of circulation. We based our judgment upon authority of Grosjean v. American Press Company, supra, and distinguished the case from that of

Giragi v. Moore, supra, and Arizona Pub. Co. v. O'Neil et al, supra. Now we have an ordinance which takes this case out from under the rule in Grosjean v. American Press Company, supra, and brings it squarely under the rule in Arizona Pub. Co. v. O'Neil et al, supra.

The contentions of both parties are directed to the most fundamental rights and privileges secured to our citizens by the Constitutions of our State and Nation. The right of a free press is an American concept of law without dissent. Likewise is "equality before the law" which comprehends equality in responsibility for government as well as equality in the enjoyment of privileges flowing from a stable government.

Our Constitution requires the legislature to provide for a uniform and equal rate of taxation. Article IX, Section 1. The legislature shall authorize the several municipalities to impose taxes for municipal purposes upon principles established for state taxation. Article IX, Section 5. The property of all corporations (with certain exceptions which do not apply to appellants) shall be subject to taxation. Article XVI, Section 16.

Freedom of the press is almost as old as printing. It, like its older brother freedom of speech, is indispensable to free government. We cannot circumscribe or define it, yet great scholars and jurists have filled libraries with dissertations thereon. Freedom of the press is, in truth, an ideal to which all lovers of liberty may strive in order to maintain free government in an ever changing society. Its importance cannot be magnified too much. It is not enough to say that freedom of the press is a cornerstone of free government. *It is, in fact, a prerequisite to free government.* Yet, in view of all that, it is no governmental functionary. It exercises no governmental power, neither does it perform any. It makes no law, neither does it interpret, administer or enforce any although it may wield a great influence on all. It is clothed with no power to rule, yet it is and must remain a free institution. The press renders a public service although it is a private business which can only endure under the protection of free government. It may invoke constitutional protection in

common with others. Government possesses power whereas the press wields influence. A free government and a free press are esential for either to survive. Government is charged with the duty of protecting the rights and liberties of all its citizens including "the press."

A government must have revenue. It is not a producer. Its income must be derived by taxation in one form or another. Admittedly a tax, in any form or guise, is a burden yet that alone does not impair freedom of the press any more than an income or ad valorem tax will destroy freedom of speech to any other citizen. Many states rely entirely on ad valorem taxes for revenue. We have no knowledge of any case where a newspaper has been held immune from all forms of taxation. A state may choose to substitute a gross sales tax but in that case the relative burden on a newspaper would not be changed. In this case the City of Tampa has enacted a gross sales tax. Its application is general. The tax enacted is reasonable and its terms are not arbitrary.

Appellants rely strongly on Grosjean v. American Press Company, supra. The language of the opinion reveals an entirely different case from the one now before us. We quote from that opinion:

". . . It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government. But this is not an ordinary form of tax, but one single in kind, with a long history of hostile misuse against the freedom of the press . . ."

". . . The tax here involved is bad not because it takes money from the pockets of the appellees. If that were all, a wholly different question would be presented. It is bad because, in the light of its history and of its present setting, it is seen to be a deliberate and calculated device in the guise of a tax to limit the circulation of information to which the public is entitled in virtue of the constitutional guaranties. . ."

". . . The form in which the tax is imposed is in itself suspicious. It is not measured or limited by the volume of advertisements. It is measured alone by the extent of the circulation in which the advertisements are carried, with the

plain purpose of penalizing the publishers and curtailing the circulation of a selected group of newspapers . . ."

The Grosjean case does not, in any sense, conflict with such eminent authority as Cooley on Taxation, Vol. 4, 4th Edition 1707.

"Newspaper publishers. Newspaper publishers may, without violating the constitutional provision in favor of the freedom of the press, be required to pay a license tax in respect of their business. And such a tax does not infringe a constitutional provision authorizing a tax upon business which cannot be reached by the ad valorem system."

We find no merit in the other contentions and affirm the decree.

Affirmed.

THOMAS, C.J., TERRELL, BUFORD, CHAPMAN and BARNS, JJ., concur.