[Civ. No. 4486.   Fourth Dist.   Jan. 15, 1953.]

CITY OF CORONA, Appellant, v. CORONA DAILY INDEPENDENT, Respondent.

John T. Ganahl, City Attorney, Alphonse E. Ganahl and Ganahl & Ganahl for Appellant.

Wilson, Selig & Cotter for Respondent.

GRIFFIN, J.—Plaintiff and appellant city of Corona, a municipal corporation of the sixth class, brought this action to collect a business license tax in the sum of $24.   The tax was levied upon defendant and respondent Corona Daily Independent, a partnership doing a newspaper publishing business within said city.   Defendant had previously paid the tax

up to April 1, 1951, but refused to pay it thereafter. The ordinance in question applies to all businesses, as therein defined, conducted in said city, including the business of "newspaper publication." The trial court found in favor of defendant and entered judgment accordingly. Plaintiff appealed.

The ordinance in question provides that a license fee shall be paid to the city by any person, firm or corporation commencing, transacting, or engaging in any business, show, exhibition, or lawful game in said city. Then follows a list of businesses totaling about 100 in number, and the required fee payable for the privilege of conducting said businesses. Other sections provide for the manner in which application shall be made for such a license, the manner of granting it, and a penalty for operating such a business without first having obtained a license so to do. The license fees thus levied are payable into the general fund of the city.

As agreed by the parties, the only question involved is: Does the ordinance, insofar as it levies a business tax of $8.00 per quarter upon the business of newspaper publications within said city abridge the freedom of the press in violation of the First and Fourteenth Amendments to the Constitution of the United States.

In support of the judgment defendant relies principally on the First Amendment to the Constitution, which provides: "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; . . ." And argues that these fundamental rights and liberties are likewise safeguarded against abridgment by state legislation by the operation of the Fourteenth Amendment, which provides, in part: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . ."; and that municipal ordinances adopted under state authority constitute state action and are subject to the requirements of the Fourteenth Amendment, citing such cases as *Winters* v. *People of the State of New York,* 333 U.S. 507 [68 S.Ct. 665, 92 L.Ed. 840]; *Schneider* v. *State of New Jersey,* 308 U.S. 147, 160 [60 S.Ct. 146, 150, 84 L.Ed. 155]; *Grosjean* v. *American Press Co.,* 297 U.S. 233, 243 [56 S.Ct. 444, 446, 80 L.Ed. 660]; *Carlson* v. *California,* 310 U.S. 106 [60 S.Ct. 746, 84 L.Ed. 1104]; *Lovell* v. *Griffin (Ga.),* 303 U.S. 444, 450 [58 S.Ct. 666, 668, 82 L.Ed. 949]; and *In re Porterfield,* 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675].

It is also argued by defendant that the normal presumption of constitutionality does not exist where legislation on its face involves the guaranties of the First Amendment to the Constitution, citing such cases as *Murdock* v. *Commonwealth of Pennsylvania*, 319 U.S. 105, 115 [63 S.Ct. 870, 876, 87 L.Ed. 1292, 146 A.L.R. 81] ; *West Virginia State Board of Education* v. *Barnette*, 319 U.S. 624 [63 S.Ct. 1178, 87 L.Ed. 1628, 147 A.L.R. 674] ; and *In re Porterfield, supra.*

There is authority to the effect that the normal presumption of constitutionality does not exist if the legislation, on its face, is repugnant to the guaranties of the First Amendment to the Constitution. ■ However, it also appears that where no right of free speech or any other fundamental right is involved or presented, every presumption is in favor of the validity, constitutionality, and reasonableness of a municipal ordinance, and the burden is upon the one who attacks an ordinance valid on its face and enacted under lawful authority, to prove facts to establish its invalidity. (*Ex Parte Haskell,* 112 Cal. 412 [44 P. 725, 32 L.R.A. 527] ; *In re Porterfield, supra; Pacific Gas & Elec. Co.* v. *Police Court of the City of Sacramento*, 28 Cal.App. 412, 421 [152 P. 928] ; 6 McQuillan, Municipal Corporations, 3d ed. p. 18, § 20.08; 18 Cal.Jur., p. 931, § 217; 16 C.J.S., p. 234, § 98.)

Upon the contention that the ordinance is invalid on its face and unconstitutional because it is an attack upon the exercise of freedoms and privileges secured by the Constitution, defendant relies principally upon *Follett* v. *Town of McCormick* (*S. C.*), 321 U.S. 573 [64 S.Ct. 717, 88 L.Ed. 938, 152 A.L.R. 317] ; *Murdock* v. *Commonwealth of Pennsylvania, supra; Jones* v. *City of Opelika*, 319 U.S. 103, 105 [63 S.Ct. 890, 891, 87 L.Ed. 1290] ; *Busey* v. *District of Columbia*, 319 U.S. 579 [63 S.Ct. 1277, 87 L.Ed. 1598], and (on remand) 138 F.2d 592; *Grosjean* v. *American Press Co., supra*; and *People* v. *Banks*, 168 Misc. 515 [6 N.Y.Supp.2d 41].

The Follett, Murdock, Jones and Busey cases hold that distribution of religious literature in return for money, when done as a method of spreading the distributor's religious beliefs is an exercise of religion within the First Amendment, and is immune from interference by the requirement of a license. The Murdock case and companion cases involve ordinances imposing a license tax for the privilege of canvassing or soliciting within a municipality, and the tax was endeavored to be enforced against Jehovah's Witnesses who were selling religious books, etc., by house to house can-

vassing. Mr. Justice Douglas delivered the majority opinion of the court, and defendant here points out some comforting language used in that case to support his contention in reference to freedom of the press. It was there held that the ordinance was unconstitutional as being an invasion of the rights of freedom of religion, speech and press, predicated mainly upon the theory that the activities of the solicitors were purely religious and not commercial, and held that the ordinance requiring a tax for the purpose of regulating their religious activities was in derogation of the First Amendment to the Constitution. In an equally strong dissenting opinion delivered by Mr. Justice Reed, and concurred in by Mr. Justices Roberts, Frankfurter, and Jackson, it was succinctly stated that in the First Amendment to the Constitution, where it provides that the Congress shall make no law prohibiting the *free* exercise of speech or press, it was not intended that by the use of the word *"free"* it was to be without cost, but meant a privilege to print or pray without permission and without accounting to authority for one's actions; that the draftsmen of the amendments had in mind the *practice* of religion and the right to be heard, rather than any abridgment or interference with either, by taxation in any form; that in no provision in the federal Constitution was general taxation of church or the press interdicted; that religious societies depend for their exemptions from taxation upon state constitutions or general statutes, and not on the provisions of the federal Constitution; that no decision holds that by virtue of any federal constitutional provision any church or press is free from the financial burden of government. Therein many cases relied upon by defendant, and particularly *Grosjean* v. *American Press Co., supra,* are distinguished. In the latter case a gross receipt tax was imposed upon advertisements in newspapers with a circulation of more than 20,000. The court held it was a calculated and deliberate device in the guise of a tax to limit the circulation, and held it unconstitutional, but added that: *"It is not intended by anything we have said to suggest that the owners of newspapers are immune from any of the ordinary forms of taxation for support of the government."* And it was also argued that the tax there imposed might be used readily to restrict the dissemination of ideas. The author agreed, but stated that the possibility of misuse does not make a tax unconstitutional for, as here, no abuse was claimed. It was then stated that if

the tax is used oppressively, the law will protect the victims of such action. Mr. Justice Frankfurter, in his dissenting opinion in *Jones* v. *City of Opelika, supra,* said that: "The power to tax, like all powers of government, . . . can be abused or perverted. The power to tax is the power to destroy only in the sense that those who have power can misuse it." And he quoted Mr. Justice Holmes as saying: "The power to tax is not the power to destroy while this Court sits," and stated:

"Just so long as an occupation tax is not used as a cover for discrimination against a constitutionally protected right or as an unjustifiable burden upon it, from the point of view of the Constitution of the United States it can make no difference whether such a money exaction for governmental benefits is labeled a regulatory fee or a revenue measure."

In *Watchtower B. & T. Society* v. *County of Los Angeles,* 30 Cal.2d 426 [182 P.2d 178], the Supreme Court of this state recognized the cases here cited by defendant. However, it held the tax imposed in that case was not a license tax but an *ad valorem* tax for general revenue purposes. The point here involved was not decided.

The Banks case, decided in 1938, involved an ordinance prohibiting the sale of merchandise on city streets without the payment of a license fee. The court held it unconstitutional.

It now appears, in 1951, in the case of *Breard* v. *City of Alexandria (La.),* 341 U.S. 622 [71 S.Ct. 920, 95 L.Ed. 1233], involving an ordinance prohibiting peddlers from calling upon the occupants of private residences without having been requested or invited to do so, six members of the Supreme Court, in an opinion delivered by Mr. Justice Reed, held that there was no violation of the due process clause, or any unconstitutional abridgment of freedom of speech and press by virtue of the terms of the ordinance. He said:

"This case calls for an adjustment of constitutional rights in the light of the particular living conditions of the time and place. Everyone cannot have his own way and each must yield something to the reasonable satisfaction of the needs of all. . . .

"The First and Fourteenth Amendments have never been treated as absolutes. Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. . . . We see no abridgment of the principles of the First Amendment in this ordinance."

In a dissenting opinion by Mr. Justice Black, he states that:

"On May 3, 1943, this court held that cities and states could not enforce laws which impose flat taxes on the privilege of door-to-door sales of religious literature" (citing the Jones and Murdock cases.) ". . . Over strong dissents, these laws were held to invade liberty of speech, press and religion in violation of the First and Fourteenth Amendments. Today a new majority adopts the position of the former dissenters and sustains a city ordinance forbidding door-to-door solicitation of subscriptions to the Saturday Evening Post, . . . Since this decision cannot be reconciled with the Jones, Murdock and Martin v. Struthers cases it seems to me that good judicial practice calls for their forthright overruling . . ."

As will be noted, none of the cases cited by defendant deals with a business license imposed upon the press. Plaintiff has cited authority directly dealing with that subject. Section 37101 of the Government Code provides:

"The legislative body may license, for revenue and regulation, and fix the license tax upon, every kind of lawful business transacted in the city, including shows, exhibitions, and games . . ."

There is ample authority to the effect that newspapers and the business of newspaper publication are not made exempt from the ordinary forms of taxes for the support of local government by the provisions of the First and Fourteenth Amendments to the Constitution of the United States. (*Grosjean* v. *American Press Co., supra*; *Tampa Times Co.* v. *City of Tampa*, 158 Fla. 589 [29 So.2d 368], 332 U.S. 749 [68 S.Ct. 68, 69, 92 L.Ed. 336].)

The principal question here involved appears to be of first impression in the State of California. However, license taxes similar to the tax here in question and imposed upon the press have been upheld by the courts of other states as not in violation of the constitutional guarantee of freedom of the press. Among the cases decided are *In re Jager* (1888), 29 S.C. 438 [7 S.E. 605] (S.Ct. S. Carolina), wherein a criminal action was brought against one John McElree, charged with publishing a newspaper without having first procured a license, in violation of the municipal business license tax ordinance. The defendant was found guilty and appealed. The Supreme Court of South Carolina sustained the conviction and said:

"But we cannot see that a tax on the business of publish-

ing a newspaper is any more an abridgement of the liberty of the press than a tax on the office, type, and other material used in the business.''

In *City of Norfolk* v. *Norfolk Landmark Publishing Co.*, (1898), 95 Va. 564 [28 S.E. 959] [S.Ct. of App., Va.], the court had before it a municipal ordinance imposing a business license tax upon every person engaged in the publication of a newspaper. The amount of the tax was not stated. The court held the ordinance valid, not an abridgment of the freedom of the press, and said, at page 960:

''The guaranties of the constitution and bill of rights in favor of the freedom of the press, freedom of speech, and personal liberty, were never intended to restrict the right of taxation for the support of the government. If these guaranties did restrict the power of taxation, the government would soon be insolvent, and powerless to furnish the protection claimed.''

In *Giragi* v. *Moore*, 49 Ariz. 74 [64 P.2d 819, 110 A.L.R. 320] [S.Ct. Ariz.], appeal dismissed in 301 U.S. 670 [57 S.Ct. 946, 81 L.Ed. 1334], plaintiffs brought suit for declaratory relief as to the Arizona Excise Revenue Act of 1935, and challenged the constitutionality of the act upon the grounds here mentioned. The court held that the tax was a general sales tax law levying a one per cent tax upon the sales or gross income of practically every business or concern engaged in selling merchandise or services in the State of Arizona, including newspaper publications. The court held the act constitutional and the tax valid. (See, also, *Arizona Pub. Co.* v. *O'Neil*, 22 F.Supp. 117 [affirmed, 304 U.S. 543 [58 S.Ct. 950, 82 L.Ed. 1518] (1938)].)

In *Associated Press* v. *National Labor Relations Board*, 301 U.S. 103 [57 S.Ct. 650, 81 L.Ed. 953] (1937), the court said, at page 656:

''The business of the Associated Press is not immune from regulation because it is an agency of the press. The publisher of a newspaper has no special immunity from the application of general laws . . . Like others he must pay equitable and nondiscriminatory taxes on his business.''

In *Reuben H. Donnelley Corp.*, v. *City of Bellevue*, 283 Ky. 152 [140 S.W.2d 1024], [Ky. Ct. of App. 1940], the court said, at page 1026:

''The privilege of distributing advertising matter is available to any one paying the tax. True it is that a license is required. We construe the term, however, not in the sense

of being a grant or permission but as descriptive of the tax and the document evidencing its payment.'' And further said:

''If the right of the state or a municipal subdivision merely to exact a reasonable license tax for the privilege of carrying on the business of distributing advertising matter, or even of publishing a newspaper, for private profit, be denied as an abridgment of freedom of speech or press, then there is a clash with the fundamental social and political philosophy and constitutional mandate of equality of right and equality of burden. . . . The business of advertising possesses no virtue justifying immunity from the ordinary license or other taxes. Freedom of speech or publication does not authorize it.''

In *Tampa Times Co.* v. *City of Tampa, supra,* an ordinance imposed an annual business license tax upon newspapers, magazines and other periodicals or publications, based upon gross receipts, with a minimum tax of $10 per annum upon receipts from all sales and advertising, both wholesale and retail. The tax applied equally to all lines of business. There was no claim that the ordinance was arbitrary or harsh in nature. There the court held that the ordinance was one for revenue; that the question was one of whether or not a newspaper was immune from the burden of taxation to maintain government; and declared that it had no knowledge of any case where a newspaper had been held immune from all forms of taxation. The court stated that a tax in any form is a burden, yet that alone does not impair freedom of the press any more than an *ad valorem* tax will destroy freedom of speech. On appeal to the Supreme Court of the United States, the action was dismissed for want of a substantial federal question.

The phrase ''power to tax is the power to destroy'' is without application to the issue here presented. There is no allegation or showing by defendant that the amount levied was arbitrary or harsh in nature, or oppressive or confiscatory, or that defendant's freedom to disseminate news and comment has been actually curtailed or abridged by the requirement that it shall pay a tax of $8.00 per quarter for publishing its newspaper. Nor is there any showing that the imposition of the tax was for the purpose of regulating defendant's business.

While the ordinary business tax here in issue is levied in form upon the privilege of engaging in or transacting business, it is, on its face and in fact, a tax for revenue purposes

only, and does not grant or take away any right to do business, does not subject business to withdrawal or control by the city, is not regulatory in any manner, and in substance has been recognized and upheld by the weight of authority.

We conclude that a nondiscriminatory tax, levied upon the doing of business, for the sole purpose of maintaining the municipal government, without whose municipal services and protection the press could neither exist nor function, must be sustained as being within the purview and necessary implications of the Constitution and its amendments.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied February 6, 1953, and respondent's petition for a hearing by the Supreme Court was denied March 12, 1953.