CITY OF ABSECON, PLAINTIFF-RESPONDENT, v. BENJAMIN A. VETTESE, DEFENDANT-APPELLANT.

Argued October 26, 1953—Decided November 23, 1953.

582

*Mr. Harry Green* argued the cause for the appellant.

*Mr. Samuel Levinson* argued the cause for the respondent.

*Mr. Morgan R. Seiffert* filed a brief *amicus curiae* for the New Jersey Press Association.

The opinion of the court was delivered by

Jacobs, J. The defendant, publisher of a weekly newspaper, was convicted in the Municipal Court of Absecon of having carried on the business of publisher without a license in violation of a local ordinance. His conviction was affirmed in the County Court, and his appeal to the Appellate Division has been certified under *R. R.* 1:10–1(*a*).

In 1931 the City of Absecon adopted an ordinance which provided in section 1 that no person shall engage in "the carrying on of any store, business, trade or occupation" in Absecon without first obtaining a license as therein prescribed. Section 4 specifically listed numerous businesses and annual flat license fees in varying amounts and provided for a fee of $5 per annum for "other businesses not herein mentioned." In 1946 an amendatory ordinance was enacted which added the following to Section 4: "Publisher—$50.00." The defendant has been the publisher of *The Weekly News,* an Absecon newspaper, since 1943 and paid the prescribed fee in 1946 and annually to April 30, 1951. Each payment was made under protest and no payment was made for any license period after April 30, 1951. On March 13, 1953 a complaint was filed in the municipal court charging that the defendant did carry on the business of publisher at 119

White Horse Pike, Absecon, without having applied for or received a license as required by the ordinance as amended in 1946, and on March 23, 1953 he was found guilty of the charge. He duly appealed and a trial *de novo* was held in the County Court.

On behalf of the prosecution, the city clerk testified that the defendant was a newspaper publisher and had conducted his business in Absecon after April 30, 1951 without a license. Testifying on his own behalf, the defendant admitted that he published a weekly newspaper in Absecon and had paid the annual license fee of $50 for the period expiring April 30, 1951 but not thereafter. He contended, however, that the amendatory ordinance was invalid on the ground that its passage was not preceded by publication in a "newspaper published and circulating in the municipality" as required by *R. S.* 40:49–2(*a*). The County Court rejected this contention, stating that an attack based on such procedural irregularity could not be entertained in view of the defendant's laches. See *Benequit v. Monmouth Beach*, 125 *N. J. L.* 65, 68 (*Sup. Ct.* 1940); *West Essex Bldg., etc., Assn. v. Caldwell*, 112 *N. J. L.* 466, 468 (*Sup. Ct.* 1934), affirmed 113 *N. J. L.* 398 (*E. & A.* 1934). On May 20, 1953 an order was signed in the County Court affirming the defendant's conviction and directing that he pay a fine of $50 and costs, and on July 7, 1953 the defendant's notice of appeal was served and filed.

The plaintiff contends that since the appeal was taken outside the 45-day limitation provided in *Rule* 1:2–5 (now *R. R.* 1:3–1(*b*)) it was not timely and should be dismissed. That limitation relates to non-criminal matters; the rule expressly provides that in criminal causes the limitation shall be three months on appeals from final judgments in the trial divisions of the Superior Court and County Courts. *Rule* 1:2–5 (now *R. R.* 1:3–1(*a*)). Since the adoption of our new court rules in 1948 it has become well established that, for procedural purposes, conviction for violation of a municipal ordinance is to be treated as a criminal cause. See *City of Newark v. Pulverman*, 12 *N. J.* 105, 114 (1953),

where the earlier cases are cited and discussed. The defendant's conviction was governed by what is now *R. R.* 1:3–1(*a*) and his appeal was timely.

The defendant urges that the entire ordinance should be stricken on the ground that it was passed solely for revenue purposes, contains no regulatory features, and is invalid under the principles set forth by this court in *Salomon v. Jersey City*, 12 *N. J.* 379 (1953). In the light of the opinion in that case there is serious question as to whether the ordinance in its present form may stand. However, we need not determine that issue since we are satisfied that, in any event, the Legislature has not authorized municipalities to impose license fees on newspaper publishers for the privilege of doing business within the municipal confines. Although the point was not urged below it presents a subject of great public concern and should be determined. *City of Newark v. Pulverman, supra.* We find no occasion to deal with the plaintiff's assertion, made at oral argument but not supported by anything in the record, that the defendant also engages in other unlicensed business such as job printing. He was never charged with any such violation and the only charge actually presented, tried and adjudicated was that he published a weekly newspaper without obtaining a license as required by the ordinance. That is the only charge we are at liberty to deal with on this appeal.

The constitutional issues presented by the imposition of licensing and taxing requirements on the publication of newspapers have been extensively considered in the cases. See *Grosjean v. American Press Co.*, 297 *U. S.* 233, 56 *S. Ct.* 444, 80 *L. Ed.* 660 (1936); *Giragi v. Moore*, 48 *Ariz.* 33, 58 *P. 2d* 1249, 64 *P. 2d* 819, 110 *A. L. R.* 314 (1936), *appeal dismissed*, 301 *U. S.* 670, 57 *S. Ct.* 946, 81 *L. Ed.* 1334 (1937); *City of Corona v. Corona Daily Independent*, 115 *Cal. App. 2d* 382, 252 *P. 2d* 56 (1953), *certiorari* denied 74 *S. Ct.* 2 (1953). In the *Grosjean* case [297 *U. S.* 233, 56 *S. Ct.* 449], the court dealt with an infamous attempt to control Louisiana newspapers by the imposition of a gross receipts license tax on newspapers having a circulation of

more than 20,000 copies per week. The court struck it down stating that although newspapers were not immune from ordinary forms of taxation, this was "not an ordinary form of tax, but one single in kind, with a long history of hostile misuse against the freedom of the press." The court's solicitude was well grounded. The free press is a bulwark of our democratic way of life and courts must be ever vigilant to curb insidious as well as candid attempts to restrict its vital public functions. However, where there is no such malevolent attempt and the governmental requirement is being fairly applied to all, including newspaper publishers, courts find no impairment of the constitutional guaranty of freedom of press. See *Mabee v. White Plains Pub. Co.*, 327 *U. S.* 178, 184, 66 *S. Ct.* 511, 514, 90 *L. Ed.* 607, 613 (1946), where the court noted that since "the press has business aspects it has no special immunity from laws applicable to business in general." See also *Associated Press v. National Lab. Rel. Bd.*, 301 *U. S.* 103, 132, 57 *S. Ct.* 650, 81 *L. Ed.* 953, 961 (1937); *Arizona Pub. Co. v. O'Neil*, 22 *F. Supp.* 117 (*D. C. D. Ariz.* 1938), affirmed 304 *U. S.* 543, 58 *S. Ct.* 950, 82 *L. Ed.* 1518 (1938); *Giragi v. Moore, supra; City of Corona v. Corona Daily Independent, supra.*

In the *City of Corona* case, *supra*, a municipal license tax was imposed on all business, including "newspaper publication." An attack on the tax by the *Corona Daily Independent*, a local newspaper, was grounded on the constitutional guaranty against adbridgement of freedom of the press and reliance was placed upon cases typified by *Murdock v. Commonwealth of Pennsylvania*, 319 *U. S.* 105, 63 *S. Ct.* 891, 87 *L. Ed.* 1292 (1943), where the court, in an opinion written by Justice Douglas and joined in by four other justices, invalidated the application of a municipal license tax to persons distributing literature and soliciting the purchase of certain religious books. In the course of its opinion the court used broad language suggesting that license taxes may never be imposed for the exercise of constitutional privileges such as freedom of worship, speech and press. However, in the more recent case of *Breard v. City of Alexandria*, 341

*U. S.* 622, 71 *S. Ct.* 920, 95 *L. Ed.* 1233 (1951), rehearing denied, 342 *U. S.* 843, 72 *S. Ct.* 21, 96 *L. Ed.* 637 (1951), the Supreme Court, in an opinion written by Justice Reed for a new majority of six justices, and sustaining an ordinance which prohibited peddlers from calling upon occupants of private houses without having been invited to do so, significantly restricted the sweep of the language in the *Murdock* case. Indeed, a dissenting opinion by Justice Black, joined in by Justice Douglas, expressed the view that the majority opinion in the *Breard* case had, in effect though not in express terms, overruled the *Murdock* case. *Cf. Poulos v. New Hampshire*, 345 *U. S.* 395, 73 *S. Ct.* 760, 97 *L. Ed.* 1105 (1953), rehearing denied, 345 *U. S.* 978, 73 *S. Ct.* 1119, 97 *L. Ed.* 1392 (1953). In the *City of Corona* case the court, after considering fully the *Murdock* and *Breard* cases and other pertinent authorities, concluded that there was no constitutional inhibition against the city's license tax levied upon all local business, including newspaper publication. On October 12, 1953 the Supreme Court denied *certiorari*, 74 *S. Ct.* 2; Justices Douglas and Black dissented with a brief re-expression of the view in the *Murdock* case that a license tax may not be imposed "on the exercise of a privilege granted by the Bill of Rights."

In the light of all of the foregoing we incline to the view that our Legislature has adequate constitutional power to authorize a municipality to impose reasonable non-discriminatory license fees on local newspaper publishing businesses. But the power is by no means clear and certain and its exercise is delicate and not to be implied. It must be rested on legislative expression of clear import, and nowhere in our statutes do we find any such expression. Indeed, the only statutory authority suggested by the City of Absecon is *paragraph (g)* of *R. S.* 40:52–1, which provides that the governing body may make, amend, repeal and enforce ordinances to license and regulate:

"Lumber and coal yards, stores for the sale of meats, groceries and provisions, dry goods and merchandise, and goods and chattels of every kind, and all other kinds of business conducted in the

municipality other than herein mentioned, and the places and premises in or at which the business is conducted and carried on; street stands for the sale or distribution of newspapers, magazines, periodicals, books, and goods and merchandise or other articles."

In *Salomon v. Jersey City, supra*, we had recent occasion to consider the meaning of *paragraph (g)*, and no present purpose would be served by restating in detail the principles and authorities embodied therein. In brief, the city there had adopted an ordinance imposing license taxes upon business concerns operating within its borders, including manufacturers, wholesalers and retailers. It contended that the phrase "all other kinds of business" displayed a legislative intent to authorize license taxes on all businesses without exception. Amply supported by the pertinent legislative history and the rule of *ejusdem generis*, we flatly rejected this contention, holding that the other businesses contemplated were businesses of like kind. In other words, *paragraph (g)* was designed to include, within the municipal authority to license and regulate, businesses such as lumber and coal yards, retail stores and other local merchandising outlets, news stands and similar enterprises. None of these is in any wise comparable to the business of publishing a newspaper, and nowhere do we find any shred of evidence suggesting that our Legislature meant, *sub silentio*, to delegate to municipalities the extraordinary power of imposing license fees on the privilege of publishing newspapers.

We are satisfied that the ordinance, insofar as it is sought to be applied to the publication of the defendant's newspaper, is invalid and that the conviction below must be

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.