PER CURIAM.
The City of Hallandale appeals from a final judgment which determines that its occupational license ordinance, adopted pursuant to section 205.042, Florida Statutes, violates the First and Fourteenth Amendments to the United States Constitution as applied to the operation of newsracks within the City of Hallandale. The court below * reached what we hold to be the correct result and we adopt in its entirety the Final Judgment entered by Judge Anstead as the opinion of this court:

FINAL JUDGMENT

After a long procedural history[1], this case is before this court for final disposition. The parties have filed a joint stipulation of facts and evidence in which there are no significant disputes. They have also stipulated in open court that the court may treat the hearing on their respective motions for summary judgment as the final hearing on the merits in this cause.

*930
MATERIAL FACTS

In 1979, defendant passed ordinances[2] which imposed a flat annual license tax on all vending machines within the city, including newspaper dispensing machines. The plaintiffs are involved in the distribution of newspapers in the city by use of vending machines. A vending machine owner is required to obtain a license to be placed on the vending machine to show conformity to the ordinances. The ordinances affect all vending machines and the licenses have in the past been granted automatically upon the payment of the fee. The fee for the license as to the newspaper machines is ten dollars ($10) per year. If no license is placed on the vending machine, the city may place a written warning on the machine that payment is required within ten (10) days. If payment is not then made, the machines may be sealed by defendant. The proceeds of the tax are placed into the city’s general revenue fund.
Plaintiffs are seeking a judgment declaring the ordinances to be in violation of their First Amendment and Fourteenth Amendment[3] rights. Defendant contends that the license ordinance is constitutional, and seeks accrued back payments from plaintiffs. Defendant has voluntarily stayed enforcement of the ordinances as to the plaintiffs pending resolution of this action. Plaintiffs concede that the city could impose a reasonable license fee to defray the expense of regulating the use of newspaper vending machines in the city. However, the city concedes that the license tax imposed is unrelated to the cost of administration and is levied solely as a revenue measure.

LAW

Plaintiffs rely primarily on a line of cases which begin with Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). In that ease, the Supreme Court struck down the application of an ordinance which required the purchasing of a license by all solicitors. The Court held that the license requirement acted as an unconstitutional prior restraint as applied to petitioner Murdock, a Jehovah’s Witness distributing religious literature from door to door. The Court noted that a tax or fee is permissible by the state to defray the administrative costs of regulating First Amendment activity or upon revenue generated from the activity. However, the government may not impose a flat revenue fee upon the simple exercise by a citizen of a freedom guaranteed by the constitution. In so holding, the Court declared:
The power to impose a license tax on the exercise of these freedoms is indeed as potent as the power of censorship which this Court has repeatedly struck down. Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Schneider v. State, supra [308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) ]; Cantwell v. Connecticut, 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213,128 A.L.R. 1352; Largent v. Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873; Jamison v. Texas, supra [318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943) ]. It was for that reason that the dissenting opinions in Jones v. Opelika, supra, stressed the nature of this type of tax. 316 U.S. [584] at pages 607-609, 620, 623, 62 S.Ct. [1231] at pages 1243, 1244, 1250, 1251, 86 L.Ed. 1691, 141 A.L.R. 514. In that case, as in the present ones, we have something very different from a registration system under which those going from house to house are required to give their names, addresses and other marks of identification to the authorities. In all of these cases the issuance of the permit or license is dependent on the payment of a license tax. And the license tax is fixed in amount and unrelated to the scope of the activities of petitioners or to their realized revenues. It is not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question.[3] It. is in no way apportioned. It is a flat license tax levied and *931 collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment. Accordingly, it restrains in advance those constitutional liberties of press and religion and inevitably tends to suppress their exercise. That is almost uniformly recognized as the inherent vice and evil of this flat license tax. As stated by the Supreme Court of Illinois in a case involving this same sect and an ordinance similar to the present one, a person cannot be compelled “to purchase, through a license fee or a license tax, the privilege freely granted by the constitution.”
[3] The constitutional difference between such a regulatory measure and a tax on the exercise of a federal right has long been recognized. While a state may not exact a license tax for the privilege of carrying on interstate commerce (McGoldrick v. Berwind-White Co., supra, 309 U.S. [33] at pages 56-58, 60 S.Ct. [388] at pages 397, 398, 84 L.Ed. 565, 128 A.L.R. 876) it may, for example, exact a fee to defray the cost of purely local regulations in spite of the fact that those regulations incidentally affect commerce. "So long as they do not impede the free flow of commerce and are not made the subject of regulation by Congress, they are not forbidden.” Clyde-Mallory Lines v. Alabama, 296 U.S. 261, 267, 56 S.Ct. 194, 196, 80 L.Ed. 215, and cases cited. And see South Carolina v. Barnwell Bros., Inc., 303 U.S. 177, 185-188, 625, 58 S.Ct. 510, 513-515, 82 L.Ed. 734.
Murdock, 63 S.Ct. at 875. The holding in Murdock was extended to book sellers in Follett v. Town of McCormick S.C., 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944).
The Court has limited the scope of the Murdock holding to flat license fees or taxes that serve as a prior restraint on a First Amendment right. In Jimmy Swaggart Ministries v. Bd. of Equalization of California, 493 U.S. 378,110 S.Ct. 688,107 L.Ed.2d 796 (1990), the Supreme Court looked to see if the tax burden was a flat license tax like that in Murdock or a proper tax measure on commercial activity. In upholding a neutral sales tax on religious goods, Swaggart limited the holdings of “Murdock and Follett to apply only where a flat license tax operates as a prior restraint on the free exercise” of First Amendment liberties. Jimmy Swaggart Ministries, 493 U.S. at 389, 110 S.Ct. at 695.
Like the religious literature distributors in Murdock, the plaintiffs here claim the First Amendment also protects newspaper distributors, like newsboys hawking newspapers on public street corners.[4] Indeed, there appears little basis for distinction between newsboys and the solicitors in Murdock. The question here is whether the use of newspaper vending machines is entitled to the same protection presumably enjoyed by newsboys. This question has apparently been answered affirmatively by the United States Supreme Court. In a recent decision, the Court held that the distribution of newspapers through news-racks on public property is entitled to First Amendment protection.
In City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Court invalidated a municipal licensing scheme that vested discretion in the mayor to grant licenses for newsracks. In rejecting a contention that newsracks should be treated like commercial vending machines, the Court declared:
The foregoing discussion explains why the dissent’s analogy between newspa *932 pers and soda vendors is inapposite. See Post, at 2150-2151. Newspapers are in the business of expression, while soda vendors are in the business of selling soft drinks. Even if the soda vendor engages in speech, that speech is not related to the soda; therefore preventing it from installing its machines may penalize unrelated speech, but will not directly prevent that speech from occurring. In sum, a law giving the Mayor unbridled discretion to decide which soda vendors may place their machines on public property does not vest him with frequent opportunities to exercise substantial power over the content or viewpoint of the vendor’s speech by suppressing the speech or directly controlling the vendor’s ability to speak.
The proper analogy is between newspapers and leaflets. It is settled that leaflets may facially challenge licensing laws. See e.g., Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). This settled law is based on the accurate premise that peaceful pamphleteering “is not fundamentally different from the function of a newspaper.” Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971); see also Lovell, supra, 303 U.S., at 450-452, 58 S.Ct., at 668-669. The dissent’s theory therefore would turn the law on its head. That result cannot be justified by relying on the meaningless distinction that here the newspapers are ultimately distributed by a machine rather than by hand. First, the ordinance held invalid in Lovell applied to distribution “by hand or otherwise.” 303 U.S., at 447, 58 S.Ct., at 667. The Court did not even consider holding the law invalid only as to distribution by hand. Second, such a distinction makes no sense in logic or theory. The effectiveness of the newsrack as a means of distribution, especially for low-budget, controversial neighborhood newspapers, means that the twin threats of self-censorship and undetectable censorship are, if anything, greater for newsracks than for pamphleteers. Cf. Schneider v. State, 308 U.S. 147, 164, 60 S.Ct. 146,152, 84 L.Ed. 155 (1939) (relying on the effectiveness of pamphleteeing); Martin v. Struthers, 319 U.S. 141, 145-146, 63 S.Ct. 862, 864-865, 87 L.Ed. 1313 (1943) (same).
City of Lakewood, 486 U.S. at 761, 108 S.Ct. at 2146.[5] This language, while not directly related to the issue at hand, strongly suggests that the Murdock bar on flat license fees as to distributors of literature would also apply to the distribution of literature by newsracks. See also Sentinel Communications Co. v. Watts, 936 F.2d 1189, 1195 (11th Cir.1991), interpreting, City of Lakewood.[6]
Murdock held that while a license fee may be levied for defrayment of administrative costs in regulating the exercise of a First Amendment right, a flat license tax cannot be used solely to raise revenue. See e.g., Sentinel Communications Co., 936 F.2d at 1189. This narrows the case here into a single issue of “administrative costs v. revenue.” And this issue is resolved by the parties candid stipulation of facts. Plaintiffs concede that a city may tax newspapers for the cost of regulating the newsracks. But defendant concedes that the ordinances involved herein are revenue generating rather than cost relat *933 ed. This key fact requires resolution of the case in favor of plaintiffs.- Therefore, this court’s decision in favor of plaintiffs is compelled, regardless of whether the ordinances appear to be reasonable and nondiscriminatory. With First Amendment protection clearly invoked, nondiscrimination is irrelevant, Murdock, 319 U.S. at 115, 63 S.Ct. at 876, and the cost is immaterial, Hull v. Petrillo, 439 F.2d 1184, 1186 (2d Cir.1971).
Accordingly, this court finds the ordinances as applied to plaintiffs to be an unconstitutional violation of the First Amendment and the Fourteenth Amendment of the United States Constitution.

PROCEDURAL DUE PROCESS

Plaintiffs also claim that the ordinances violate the procedural due process of the Fourteenth Amendment in that there is no hearing allotted to dispute any notice of delinquent payment for the license. However, having found the ordinances unconstitutional under the First Amendment and the Fourteenth Amendment above, there is no need to discuss procedural due process any further.

CONCLUSION

Because the newsracks in question are on public property, thereby invoking First Amendment protection, and because the ordinances are for revenue and not for the defrayment of costs for policing or maintaining the newsracks, this court finds in favor of plaintiffs. The defendant is hereby permanently enjoined from enforcing the licensing tax in its present form against the plaintiffs. The defendant’s counterclaim is denied.
DONE AND ORDERED this 24 day of January AD, 1992.
AFFIRMED.
POLEN and STEVENSON, JJ., concur.
HERSEY, J., concurs in result only.

 Appeal from the Circuit Court of the 17th Circuit, Harry Lee Anstead, Acting Circuit Judge.

. The plaintiffs obtained a summary judgment and injunction in the Federal District Court for the Southern District of Florida. In 1982, defendant appealed to the Eleventh Circuit Court of Appeals, which affirmed in part, but dismissed the bulk of the case, having found that under the Tax Injunction Act, 28 U.S.C. section 1341, the only forum for the constitutional questions of this case was in state court. Miami Herald v. City of Hallandale, 734 F.2d 666 (11th Cir.1984). See also Miami Herald v. City of Hallandale, 742 F.2d 590 (11th Cir.1984).

. The relevant ordinances, with some modifications, are currently numbered Chapter 18, City’s Code of Ordinances.

. Making the First Amendment applicable to the states.

. There are also cases which have held that some taxes and regulations on newspaper distribution are constitutional. See Tampa Times v. City of Tampa, 158 Fla. 589, 29 So.2d 368 (1947) (city ordinance imposing an annual license tax of ten dollars ($10.00) per annum on retail sellers of newspapers and magazines upheld), appeal dismissed, 332 U.S. 749, 68 S.Ct. 69, 92 L.Ed. 336 (1947); City of Corona v. Corona Daily Independent, 115 Cal.App.2d 382, 252 P.2d 56 (Cal. 4th DCA 1953) (business license tax on newspaper upheld), cert, denied, 346 U.S. 833, 74 S.Ct. 2, 98 L.Ed. 356 (1953); Gannett Satellite Inf. Net. v. Metro. Transp. A., 745 F.2d 767 (2d Cir.1984) (license fee for regulation of newsracks of seventy five dollars ($75.00) per annum upheld). However, in this court's view, these cases are distinguishable on the facts or have been functionally overruled by the United States Supreme Court in City of Lakewood, infra.

. The Court expressly withheld any opinion on the issue of whether newsracks could be barred outright on public property. This court does likewise, since that is not an issue in the case. However, it would appear to the court that, contrasted with the situation with individuals personally engaging in First Amendment activity, a municipality would have a substantial interest in the placement of objects on public property.

. It seems that most cases — federal district, federal appellate, state trial, and state appellate— which have addressed the question of First Amendment protection for newsracks have extended such protection. See e.g., Passaic Daily News v. Clifton, 200 N.J.Super. 468, 491 A.2d 808 (N.J.Super.L.1985); Chicago Tribune Co. v. City of Chicago, 705 F.Supp. 1345 (N.D.M.1989); Gannett Satellite Inf. Net. v. Metro Transp. A., 745 F.2d 767 (2d Cir.1984). See also Sentinel Communications Co., 936 F.2d at 1196-1197, for additional cites.