## INFORMATION AGAINST JAGER.

### SAME AGAINST ECKEL.

### SAME AGAINST McELREE.

### SAME AGAINST SAME..

1. Where the statute requires a prosecution to be in the form of an information on the official oath of the corporation counsel, the presentation to the court by this officer of an information which states that the matters contained are charged upon his oath of office, is sufficient.

2. A city council being empowered to impose such license taxes as in their judgment are "wise and just," inquiry cannot be made as to whether the members of council approved the licenses charged in a duly ratified ordinance of the city. That the licenses were "wise and just" in the judgment of the council is conclusively shown by the fact that the ordinance was passed.

3. It has been judicially settled in this State that the power to raise revenue by a license-tax on business given by statute to the city council of Charleston, does not violate any provision of our State constitution.

4. A license granted to a druggist by the Board of Pharmaceutical Examiners under the statute is no defence against a license-tax on the business of a druggist imposed by a municipal corporation.

5. A tax on the business of publishing a newspaper does not restrain or abridge the liberty of the press.

6. The city ordinance required a license to be obtained for carrying on a certain business, and imposed a penalty for each and every offence of carrying on such business without such license. *Held*, that the penalty was not a satisfaction of the license, and that an offender might be prosecuted a second time for carrying on his business without license after the filing of the first information.

7. Petition for rehearing refused.

Before HON. W. A. PRINGLE, Recorder, Charleston, February, 1888.

The opinion fully states the cases.

*Mr. A. G. Magrath*, for appellant.

*Mr. Charles Inglesby*, contra.

October 19, 1888.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN. These were informations in the City Court of Charleston for alleged violations of an ordinance of the city, entitled "An ordinance to regulate licenses for the year 1888," ratified December 31, 1887; the first for carrying on unlawfully the business of "a dealer in dry goods" without having paid the license required therefor; the second for carrying on unlawfully the business of "a dealer in drugs and medicines," without a license; the third for carrying on unlawfully the business of "publishing a daily newspaper worked by steam," without a license; and the fourth, for a second offence against the same person (John McElree) for publishing his "daily newspaper" without a license at a period later than the filing of the first information against him. As the cases involved the same general question, they were heard together, and will be so considered now. In order, however, to prevent confusion, we will address ourselves to the first case named, with the understanding that what is said shall apply to all the cases, except where they may differ in character, and in that case attention will be called to such difference.

The information was drawn from that set out in the case of Oliver, 21 S. C., 318, stating that "Charles Inglesby, corporation counsel for the city of Charleston, comes into court, and upon his oath of office gives the court to understand," &c., and was signed by the corporation counsel, and endorsed as follows: "On hearing the above information, and on motion of Charles Inglesby, corporation counsel, it is ordered that the same be filed, and that the said case be fixed for trial on the first Monday of March, 1888, at 10 o'clock, a. m., and that a copy of said information and of this order be forthwith served upon the said A. W. Jager." (Signed) W. A. Pringle, recorder.

The information having been read, the defendant moved to quash it on the ground that it was not sworn to, as the law required. The motion was refused, and the trial proceeded. The recorder states, "that the corporation counsel introduced the clerk of council, who proved the ordinance ratified December 31, 1887, 'to regulate licenses for the year 1888.'" In the cross-examination, the defendant called for the production of the proceedings of the city council, to show on the face of those proceed-

ings that the ordinance in question was not, as required by law and the act of the general assembly, "wise and just." The recorder overruled the motion, stating that it was for the city council and not the jury to determine whether the ordinance in question was "wise and just." (Defendant excepted.) The corporation counsel then proved that the defendant was carrying on a business as charged in the information, and had not taken out a license for the same as required.

The corporation counsel having closed, the defendant proved by the city assessor that he had duly returned for taxation as personal property the stock of goods, wares, and merchandise, with which he was carrying on the business for which the ordinance required him to take out a license. He submitted sundry requests to charge, which were refused, but which need not be set out here, inasmuch as they all appear in the exceptions and grounds of appeal. Under the charge of the recorder, the jury found the defendant "guilty," and he appeals to this court upon various exceptions (fourteen in number) which are in the Brief; but as they are long and state the same matter in various forms, need not be restated here. We think, for the sake of clearness, they may be condensed into the following propositions:

1. That his honor erred in ruling that the oath required to an information, when one of the penalties imposed for the violation of an ordinance is imprisonment, was sufficiently complied with by the statement in the information.

2. That the power to issue licenses implies that the mayor and aldermen are a deliberative body, to the end that they may assist each other by their united wisdom and experience, and the defendant should have been allowed to prove that this ordinance was not the act of a deliberative body, and the result of their united wisdom and experience; and to show that on the face of the proceedings of the city council, the ordinance was not, as required by law and the act of the general assembly, "wise and just."

3. The purpose of the license tax being simply for revenue, it is an exercise of the taxing power, and under the constitution the State itself could not, nor could it authorize a municipal corporation to, raise revenue by such a mode of taxation. In other words, that the act of the legislature (1881) which gives the

power to the city council of Charleston to levy such a license tax, is unconstitutional.

4. That in the case against Eckel, "a dealer in drugs and medicines," his honor erred in refusing to charge the jury that as the defendant had a license from "the State board of pharmaceutical examiners," he was not subject to municipal regulations.

5. That in the case against John McElree, the "publisher of a daily newspaper," his honor erred in refusing to charge the jury, that to require a license for conducting such a business was in violation of the declaration of rights in the constitution of the State in regard to "the liberty of the press."

6. That in the second case against the same person (John McElree), his honor erred in refusing to charge, that the power to pass ordinances and to punish for their violation, must be reasonably exercised, and the court will not so construe an ordinance as to multiply one offence into many and punish for each separately.

First. As to the exception that the information was not a compliance with the law in respect to the oath required. Section 2131, of the General Statutes, upon this subject, provides, "except in cases for the violation of ordinances when imprisonment is imposed in addition to, or in the alternative of, a fine, in which cases the prosecution shall be in the form of an information on the official oath of the corporation counsel," &c. It will be observed that the information itself states that "Charles Inglesby, corporation counsel for the city of Charleston, comes into court here, and upon his oath of office gives the court to understand," &c. The recorder reports that "the information was presented to him in term time, by the corporation counsel, with his signature attached. The personal presentation by the corporation counsel of an information, signed by him, in which it is stated that it is made in the City Court of Charleston upon his oath of office, I regarded as the actual taking of the oath required by law, and quite as legal, although expressed in writing or in print, as if expressed verbally." We cannot say that this was error. See *Information* v. *Oliver*, 21 S. C., 322.

Second. As to the refusal of the recorder to require the production of the proceedings of the city council, on the occasion of the passage of the ordinance under which the information was

filed.    The act of 1881 (17 *Stat.*, 582) provides, "That the city
council of Charleston be, and are hereby, authorized to require
the payment of such sum or sums of money, not exceeding five
hundred dollars, for license or licenses, as in their judgment be
just and wise, by any person or persons engaged, or intending to
engage, in any calling, business, or profession, in whole or in part
within the limits of the city of Charleston, except," &c., &c.  "Sec-
tion 2.  The said city council of Charleston is hereby authorized
to pass such ordinances as are necessary to carry the intent and
purposes of this act into full effect," &c.    The defendant called
for the production of the proceedings of the city council for the
purpose, as alleged, of showing on their face that, in passing the
ordinance in question, the city council did not act as a delibera-
tive body, but hastily and upon considerations which excluded
the exercise of wisdom and experience, and that therefore said
ordinance was not, as expressly required by the act, "just and
wise."

The recorder states : "I overruled the proposal for the reason
that under the act of the general assembly above referred to, it
was for the city council and not for the jury to determine whether
the ordinance was 'wise and just;' that the ordinance itself was
the highest and best evidence that, in the opinion of the city
council, the licenses therein enacted were 'wise and just,' and it
was not competent to go behind the ordinance to show the pri-
vate and individual opinions of members of council," &c.    We
cannot say that this was error.    It was not the intention of the
act to leave open for inquiry the question of the wisdom or jus-
tice of every ordinance which might be passed under it; but to
give to the city council the power to require the payment of such
sums for licenses "as in their judgment was just and wise;" and
that such was "their judgment" in this case must be considered
as conclusively shown by the ordinance itself.    Sometimes ques-
tions do arise as to whether an enactment was passed according
to fixed requirements; as, for example, whether it received the
requisite majority or passed in a constitutional shape.    Even in
such cases, however, very grave doubt has been expressed,
whether the enactment itself, with the broad seal of the proper
authority attached, should not be taken "as importing absolute

verity." See *State ex rel. Attorney General* v. *Hagood*, 13 S. C., 60. But be that as it may, it seems to us that to allow one charged with an offence under a law to defend himself by showing that such law, although passed in due form, was, in the separate opinions of those who passed it, not "just and wise," would be subversive of the fundamental principle of judicial authority and of all good government.

Third. Then as to the alleged unconstitutionality of the act of the general assembly (1881) which purports to give the city council of Charleston the power to raise revenue by a license tax upon citizens engaged in any calling, business, or profession. This subject was elaborately and ably argued at the bar. But it would seem unnecessary, if not improper, for this court to reopen the argument after the precise point had been ruled in at least four cases. In *Information* v. *Oliver* (21 S. C., 325), it was said: "We think it would result in no good to reopen the argument and renew the discussion. It concerns the interest of all that the law and its interpretation should be settled."

In the case of the *State* v. *Hayne* (4 S. C., 413), after full and careful consideration it was decided that "A tax on professions or avocations is not forbidden by the constitution of this State, either in terms or by implication; and that for the non-payment of a tax on business, a penalty may be imposed, to be recovered by an indictment as for a misdemeanor," &c. In the case of the *State* v. *Columbia* (6 S. C., 1), it was held: "That the legislature is not forbidden by the constitution from empowering municipal corporations to enforce taxes on business, avocations, and professions, and to fix a different rate for each distinct class of persons subject to the tax. That whatever, in this regard, the State herself could do, she might authorize a municipal corporation to do within its limits. In this case no doubt has been suggested that the act of the legislature, if constitutional, does not fully authorize the ordinance of the city council, under which these proceedings were instituted." The case of *Charleston* v. *Oliver* (16 S. C., 50) then followed, and although it was held in that case that the ordinance of the city council was not authorized by the act of the legislature (1870, 14 *Stat.*, 409), which was unconstitutional for the technical reason that it did not relate

to but one subject, which was expressed in the title; yet, so far as concerned the principles and doctrine announced on the subject now in question, it expressly recognized and approved the cases of Hayne and the City of Columbia.

And in the case of *Railroad Company* v. *Gibbes* (27 S. C., 316), as late as 1887, the Chief Justice, in delivering the judgment of the court, said: "Is article I., section 36 (of the Constitution) exhaustive upon the subject? This question was fully and thoroughly examined and determined in *State* v. *Hayne* (4 S. C., 403), the court holding, after a most elaborate review and discussion of the whole matter in all its phases, that this section was not exhaustive as to the powers of the general assembly on the subject of taxation; and while, when a tax is imposed upon property (which it is admitted is the general subject matter for taxation), it must be assessed upon the value of the property and not otherwise, yet that the State was not limited to property as the only basis of taxation, and in that case a tax on the profession of law in the shape of a license fee was held constitutional."

Under these circumstances we cannot reopen the argument, but are required by force of the doctrine of *stare decisis* to hold that the question has been finally settled in this State adversely to the appellants.

Fourth. It is insisted that Eckel, "a dealer in drugs and medicines," could not be made to pay a license tax on his calling, for the reason that he already had a license from the "board of pharmaceutical examiners" of the State, and that the recorder should have so charged the jury. The recorder states: "I charged the jury as I had done in the other cases. I instructed them that the same objections as to one having a license from the 'board of pharmaceutical examiners,' might be made to one having a license to practise law, who held a license from the courts of the State, but that the Supreme Court had decided, in the case against Hayne, that it was not unconstitutional to require a license from an attorney at law, who proposed to practise law within the corporate limits."

Sections 924, 925, and 926 of the General Statutes require "that every pharmaceutist, apothecary, or retail druggist must have a license" therefor from the board above indicated, and in

order to obtain it, he must stand an examination, manifestly for the purpose of showing whether he was qualified for the responsible duties appertaining to the business. A lawyer is required to do the same, in order to get his license; and we agree with the recorder that it is difficult to perceive wherein the case of the druggist—in respect to the force of his license in exempting him from municipal taxation—is stronger than that of the licensed lawyer. In both cases the license to practise his profession is somewhat in the nature of a police regulation for the protection of the public. The word "profession" is used in the act authorizing the tax. "An attorney's license to practise law is not a contract, and therefore a lawyer is liable to a license tax." *Simmons* v. *State*, 49 Am. Dec., 131.

Fifth. In the first case against John McElree, "the publisher of a daily newspaper," the recorder was asked to charge, that to require a license for conducting such a business was in violation of the declaration of rights in the constitution in regard to "the liberty of the press." The recorder states, "I refused so to charge, and after charging the jury as I had done in the other cases, I instructed them that I regarded the point settled by the decision of the Supreme Court in the case against Oliver (21 S. C., 321), who had been found guilty of publishing a newspaper without taking out a license, and that the court had dismissed the appeal." It is true that Oliver was found guilty of publishing a newspaper without a license, and that his appeal was dismissed; but we are not quite sure that he made the precise point now raised. Section 7 of art. 1 of the Constitution declares that "all persons may freely speak, write, and publish their sentiments on any subject, being responsible for the abuse of that right; and no laws shall be enacted to restrain or abridge the liberty of speech or of the press." But we cannot see that a tax on the business of publishing a newspaper is any more an abridgment of the liberty of the press than a tax on the office, type, and other material used in the business.

Sixth. "Because the power to pass ordinances and to punish for their violation must be reasonably exercised; and the court will not so construe an ordinance as to multiply one offence into many and punish for each separately." The third section of the

ordinance is as follows : "If any person or persons shall exercise or carry on any trade, business, or profession, for the exercising, carrying on, or doing of which a license is required by this ordinance, without taking out such license as in that behalf required, he, she, or they shall for each and every offence be subject to a penalty not exceeding one hundred dollars." The recorder held that, under this ordinance, the "continuing to carry on business after the filing of the first information, without taking out a license, constitutes a new offence, for which a second information can be filed." We concur in this construction, otherwise the words, "for each and every offence," would be wholly without meaning. The period covered by the ordinance was a year, but upon a refusal to pay, the offence was complete, even before the end of the year. If the construction contended for were the correct one, the offending party might pay the fine of $100, and then continue to pursue his avocation for the remainder of the year in defiance of the law. We cannot suppose that the fine of $100 was imposed as liquidated damages or in satisfaction of the tax not paid, for the tax on different persons would necessarily vary according to the amount of business of each, while the penalty is, in all cases, the same fixed sum, imposed for the purpose simply of enforcing compliance with the law. The first information could deal only with acts done before it was filed, and if such acts were continued after that time, it seems to us that they constituted a new offence, upon which a second information might be sustained. (See *Information* v. *Oliver, supra.*)

The judgment of this court is, that the judgment of the City Court of Charleston be affirmed, and that the same judgment be entered in each of the four cases stated herein.

The defendants filed petitions for rehearing. Upon their several petitions the following order was endorsed, December 1, 1888:

PER CURIAM. We have carefully considered this petition, and finding that no material fact or point of law has been overlooked, there is no ground for a rehearing. It is therefore ordered, that this petition be dismissed, and that the *remittitur* be sent down without further delay.