BENKE, Acting P. J., Dissenting.
I disagree with three aspects of the majority’s opinion. First, the majority mischaracterizes the relief the City of Dana Point (the City) sought in its petition for a writ of mandate and complaint for injunctive relief. The face of the City’s petition and complaint is quite clear: it only seeks a determination that under Public Resources Code[1] section 30005, subdivision (b), the California Coastal Commission (the Commission) lacks the power to determine the validity of the City’s nuisance ordinance. Nothing in the City’s petition can be interpreted as requesting the trial court to determine the ultimate question of whether the ordinance is valid.
Second, and more importantly, the majority improperly requires the City establish that its ordinance was valid. The City’s ordinance is presumptively valid, and the City was not required to establish the validity of its ordinance before enforcing the separation of powers principles embodied in section 30005, subdivision (b). Rather, by its terms, section 30005, subdivision (b) plainly placed that burden on the Commission. I note the Commission could *211 have brought a cross-complaint challenging the validity of the City’s ordinance or joined the Surfrider Foundation’s action (the Surfrider case), which directly challenged the validity of the nuisance ordinance. However, the Commission chose not to take either course.
As a practical matter, by depriving the municipalities of the presumption that their nuisance ordinances are valid, the majority’s opinion will require that municipalities either obtain the approval of the Commission before exercising the power expressly and unconditionally provided to them by section 30005, subdivision (b) or be prepared to litigate their right to declare and abate nuisances. That circumstance improperly infringes on the City’s well-established constitutional and statutory prerogatives.
Third, I am baffled by the majority’s unwillingness to address and dispose of the issues raised in the City’s appeal from the judgment entered by the trial court in the Surfrider case. The City’s appeal in the Surfrider case, on a fully developed record, presents what will no doubt appear to the parties and the public to be precisely the issue the majority is requiring the trial court to revisit in the City’s case against the Commission. Not only do considerations of judicial economy suggest that we consider and determine the validity of the City’s ordinance at this point, but also the public’s substantial interest in access to the beach at the Headlands will continue to be burdened with what the trial court has determined were unlawful limitations while the trial court and the parties are compelled to again address issues we could and should resolve in the Surfrider case.
We should affirm the judgment in the City’s case against the Commission and directly address the merits of the issues presented in the Surfrider case.
I
The majority’s statement that “[i]n sum, the City asked the trial court to • rule that the City was legitimately exercising nuisance abatement powers under section 30005, subdivision (b) and that the Commission therefore lacked jurisdiction to restrict any action that the City might take pursuant to those powers” is at direct odds with what the City asked for in its action against the Commission. In fact, the City only asked the trial court to determine that the Commission had no jurisdiction to determine the validity of its ordinance and therefore the trial court need not determine whether the nuisance ordinance was valid.[2]
*212 I note that in moving for judgment on the pleadings, the City argued the Commission had no authority to review the validity of the ordinance and that instead only the courts have that power. In opposing the City’s complaint and petition, the Commission relied on the factual record developed in Commission proceedings to argue that the nuisance ordinance was arbitrary and capricious. In responding to the Commission’s factual presentation on the merits of the ordinance, the City stated: “The issue in this case ... is not whether the Commission’s decision was supported by any (let alone substantial) evidence. Rather, the issue in front of this Court is whether the Commission had the legal jurisdiction to act in the first place. The Commission’s factual evidence is irrelevant.” The City went so far as to assert not only that the Commission’s factual presentation was irrelevant but that “[t]he factual evidence supporting the City’s decision is likewise unrelated to the issue of whether the Commission’s actions were in excess of its jurisdiction.”[3]
*213 The trial court agreed with the City and determined the Commission had no power to pass upon the validity of the ordinance.
Given this record, it is simply not fair to the City or the trial court to attribute to the City a claim it did not make.
*214 II
However, more important than the majority’s mischaracterization of the relief the City requested, is the majority’s alteration of the clear separation of powers set forth in section 30005, subdivision (b).
By its terms, section 30005 states: “No provision of this division is a limitation . . . : [f] . . . [f ] (b) On the power of any city or county or city and county to declare, prohibit, and abate nuisances.”[4] (Italics added.) In light of this provision, which expressly and unconditionally permits local regulation of nuisances, we cannot imply the California Coastal Act of 1976 (Coastal Act; § 30000 et seq.) nonetheless somehow limits or preempts the City’s power to declare, prohibit and abate nuisances: “There can be no preemption by implication if the Legislature has expressed an intent to permit local regulation or if the statutory scheme recognizes local regulation.” (Delta Wetlands Properties v. County of San Joaquin (2004) 121 Cal.App.4th 128, 143 [16 Cal.Rptr.3d 672], citing People ex rel. Deukmejian v. County of Mendocino (1984) 36 Cal.3d 476, 485 [204 Cal.Rptr. 897, 683 P.2d 1150].)
Although Public Resources Code section 30005, subdivision (b) expressly and without limitation preserves the traditional police power of municipalities over nuisances (see Cal. Const., art. XI, § 7; Gov. Code, § 38771), the majority’s opinion substantially impairs that power. The impairment arises out of the majority’s holding that as a condition of obtaining the protection expressly provided by section 30005, subdivision (b), the City must show that its ordinance is valid and not pretextual.
There of course can be no serious question that the majority opinion in fact gives the Commission power to determine the validity of nuisance ordinances. Section III.A.4. of the majority opinion specifically states that on remand the trial court is directed to determine if the City was acting within the scope of section 30005, subdivision (b) in adopting its nuisance ordinance, and “[z]ra making this determination, the trial court shall decide whether the City’s enactment of the Nuisance Abatement Ordinance was a pretext for avoiding the requirements of its local coastal program and, if the court determines that there is an actual nuisance, whether the development mandated by the Nuisance Abatement Ordinance exceeds the amount necessary to abate that nuisance.” (Maj. opn., ante, at p. 207, italics added.) The *215 majority opinion goes on to say: “If the court determines that the City has established that it did not act to enact the ordinance as a pretext. . . . ” (Maj. opn., ante, at p. 207, first italics added, second italics in original.) Nothing on the face of the Coastal Act places such a burden on a municipality, and important principles of municipal and constitutional law suggest that any burden with respect to the validity of a municipal nuisance ordinance rests with the Commission, not the municipality.[5]
Initially, I note the City’s adoption of the nuisance ordinance was presumptively valid. “In determining whether a particular ordinance represents a valid exercise of the police power, the courts ‘simply determine whether the statute or ordinance reasonably relates to a legitimate governmental purpose.’ [Citation.] Every intendment is in favor of the validity of the exercise of the police power, and even though a court may differ from the determination of the legislative body, the ordinance will be upheld so long as it bears substantial relation to the public health, safety, morals or general welfare.” (Ensign Bickford Realty Corp. v. City Council (1977) 68 Cal.App.3d 467, 474 [137 Cal.Rptr. 304].) Thus, “where no right of free speech or any other fundamental right is involved or presented ... the burden is upon the one who attacks an ordinance valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.” (City of Corona v. Corona Etc. Independent (1953) 115 Cal.App.2d 382, 384 [252 P.2d 56]; see Evid. Code, § 664 [presumption official duty has been regularly performed].)
Secondly, the specific power to declare and abate nuisances is provided to municipalities both by article XI, section 7 of the California Constitution, which recognizes that municipalities may make and enforce “all local, police, sanitary, and other ordinances and regulations not in conflict with general laws,” and Government Code section 38771, which gives city legislative bodies the power to declare “what constitutes a nuisance.” (See City of Costa Mesa v. Soffer (1992) 11 Cal.App.4th 378, 383 [13 Cal.Rptr.2d 735].) Because a municipality’s police power is inherent, rather than delegated from the state, our Supreme Court has been “ ‘ “reluctant to infer legislative intent to preempt a field covered by municipal regulation when there is significant local interest to be served that may differ from one locality to another.” ’ [Citation.]” {City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc. (2013) 56 Cal.4th 729, 744 [156 Cal.Rptr.3d 409, 300 P.3d 494] {City of Riverside))
In its quite recent decision in City of Riverside, the Supreme Court found no conflict between a local ordinance which declared that any operation of a *216 marijuana dispensary could be abated as a nuisance and the express or implied provisions of the Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5 et seq.) and the Medical Marijuana Program (MMP; Health & Saf. Code, § 11362.7 et seq.), which shield individuals from criminal prosecution for possessing medical marijuana or operating a collective that dispenses it. (City of Riverside, supra, 56 Cal.4th at pp. 744-745.) In interpreting the CUA and MMP in a careful and restrained manner, which focused on their operative provisions rather than their far broader purposes, the court noted: “ ‘ “The common thread of the cases is that if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against an attack of state preemption.” ’ [Citation.]” (City of Riverside, at p. 744.)
I think the majority here errs in failing to interpret the California Environmental Quality Act (CEQA; § 21000 et seq.) in the careful and restrained manner employed by the Supreme Court in City of Riverside and, more importantly, in failing to give the City the benefit of the presumption that its ordinance was valid. In particular, the majority’s use of the general overall goals of CEQA as grounds for limiting the City’s historical police powers is incongruent with the deference City of Riverside requires that we give the City’s exercise of those very same powers.
I do not by any means suggest that a municipality has unfettered power to declare a nuisance when it has no basis for doing so. Notwithstanding its constitutional, common law and statutory powers to abate nuisances, a municipality may not by a mere “ ‘declaration that specified property is a nuisance, make it one when in fact it is not.’ [Citation.]” (Leppo v. City of Petaluma (1971) 20 Cal.App.3d 711, 718 [97 Cal.Rptr. 840].) However, while any affected party may certainly challenge the validity of an ordinance, assigning the burden of proof to the appropriate party has tremendous practical implications. If, as the majority holds, a municipality must bear the burden of establishing the validity of a nuisance ordinance, as a practical matter the City must either obtain the concurrence of the Commission before acting or be prepared to bear the considerable expense of establishing the validity of its action rather than simply defending it. In short, the rule announced by the majority creates a substantial disincentive to exercise the inherent police power recognized in our Constitution and expressly preserved by section 30005, subdivision (b).
As I noted at the outset, the Commission could have, but chose not to, bring a cross-complaint in the City’s action against it, and it could have, but chose not to, join in Surfnder’s action against the City. In litigating such claims, the Commission could have vigorously attacked the validity of the *217 City’s ordinance, but importantly consistent with the deference owed to the City’s exercise of its police power, the Commission would have borne the burden of proof.
I also observe the Commission has plenary power over the City’s adoption of a local coastal program. (Pacific Palisades, supra, 55 Cal.4th at p. 794.) Arguably, in light of the gates the City required under its nuisance powers, the Commission could have reconsidered its approval of the City’s local coastal program and the power it gave the City to issue coastal development permits. However, in light of section 30005, the Commission may not directly interfere with the City’s well-established and well-protected nuisance powers.
In sum, because the City was not required to show that its ordinance was valid, it was entitled to the relief the trial court provided to it under section 30005, subdivision (b). Thus, I would affirm the trial court’s judgment in the City’s action against the Commission.
Ill
My third area of disagreement with my colleagues is their unwillingness to reach the City’s appeal of the trial court’s judgment in the Surfrider case. Rather than staying the City’s appeal in the Surfrider case, I think it is imperative that we reach the merits of the City’s appeal of the trial court’s judgment in the Surfrider case.
As I noted at the outset, in the Surfrider case the trial court determined that the City’s ordinance is invalid; that the gates required by the ordinance are unlawful because there was no evidence of a nuisance; and that City’s use of gates to abate any nuisance was arbitrary and capricious. If the trial court was correct, the public’s interest in unfettered access to the beach in the Headlands will continue to be impaired while (1) the trial court once again determines the precise issue it determined in the Surfrider case and (2) we are once again presented with an appeal on the merits of the City’s nuisance ordinance. I fail to understand what public or jurisprudential interest is served by such a multiplicity of proceedings.
Petitions for a rehearing were denied July 10, 2013, and the opinion was modified to read as printed above. Benke, J., was of the opinion that the petition should be granted. The petitions of appellant City of Dana Point and real party in interest Headlands Reserve LLC, for review by the Supreme Court were denied September 11, 2013, S212432. Baxter, J., was of the opinion that the petition should be granted.

 All further undesignated statutory references are to the Public Resources Code.

 In its declaratory relief action, the City alleged:
“55. There is an actual, present and continuing controversy between the City and the Coastal Commission in that the City contends the Coastal Commission lacks jurisdiction to take any action to place limitations on the establishment and enforcement of the Nuisance Abatement *212 Ordinance, for the reasons set forth above. The Coastal Commission denies the City’s contention, and, as set forth above, has announced its intention to take further administrative action against the City designed to limit and prevent the City’s enforcement of the Nuisance Abatement Ordinance.
“56. It is appropriate and necessary, therefore, that the Court issue an Order declaring that:
“a. the Coastal Commission lacks jurisdiction under Coastal Act section 30005(b) to place limitations on the enforcement of the Nuisance Abatement Ordinance;
“b. the Coastal Commission lacks jurisdiction under [the] California Constitution, pursuant to the separation of powers doctrine, to adjudicate whether the City’s adoption of the Nuisance Abatement Ordinance was a legitimate and proper exercise of the City’s police power; and
“c. the Coastal Commission lacked jurisdiction to proceed with the ‘appeal,’ and thus lacks jurisdiction to proceed with any subsequent actions based upon the ‘appeal,’ because the adoption of the Nuisance Abatement Ordinance did not require any City ‘action taken ... on a coastal development permit application.’ ”
In the City’s prayer for relief, it asked for a declaration determining that the Commission lacks jurisdiction to place limitations on enforcement of the nuisance abatement ordinance; adjudicate whether the nuisance abatement ordinance was a legitimate exercise of the City’s police power; and proceed with the “appeal” the Commission acted upon.

 This is largely the argument the City made in its briefs in this court in the Commission case. I note the majority rely on what it believes was a concession by the City’s counsel at oral argument that the City had asked for a declaration that the nuisance ordinance was valid. Such a concession, if it was made, was erroneous, because, as I have explained, the City’s complaint and petition contain no such request. However, after listening to a recording of the oral argument, I am not at all certain that such a concession was ever intended by counsel at argument in this court. The discussion of what was litigated in the City’s action was as follows:
“Justice Aaron: . . . What if the trial court in the Commission versus the City case, in determining whether there was a nuisance and whether the activities were limited to actual abatement, whether there was a legitimate nuisance and whether the remediation was actually abatement?
“City Attorney: That case was never before the trial courts. Nobody sued and said—What happened is the Commission took the position they got to decide, and so we sued them saying you don’t get to do that. Surfrider sued and said it was a nuisance. Nobody sued and said what you did exceeded nuisance and became development. *213 “Justice Aaron: Didn’t the City ask for a declaration that it was legitimately exercising its nuisance abatement powers?
“City Attorney: Correct.
“Justice Aaron: Wouldn’t that be part of that analysis?
“City Attorney: That question was never analyzed because the coastal—
“Justice Aaron: It wasn’t, but could it have been?
“City Attorney: It could’ve been. It was not. The Coastal Commission took the position that it got to decide, and I would encourage you to decide that question and publish an opinion. I think it’s an important question, and you know our thought on that. We put that in our brief, that that court gets to decide.
“Justice Benke: If we conclude that they do get to decide, then where does that leave you?
“City Attorney: That the Commission gets to decide?
“Justice Aaron: Yes.
“City Attorney: I’d be sad. (laughter and some inaudible comments) In terms of this case, it would reverse the trial court’s decision and, I’d have to think that one through. I’m not sure what the impact would be. I guess it would reverse the writ that was issued against the Commission and would send it back to the trial court for further proceedings.
“Justice Benke: I thought the trial court had made a conclusion. Maybe I’m wrong. I’d have to go back and look at the language again. That the trial court had made an actual determination that the manner of enforcing policing power was overbroad.
“Justice Aaron: But that was in the Surfrider case.
“Justice Benke: That was in Surfrider. Yeah, that’s what I mean. I’m addressing Surfrider.
“City Attorney: Surfrider—I’m sorry, I didn’t mean to interrupt you.
“Justice Benke: No, I think it just got straightened out. I think you were originally addressing the Commission case.
“City Attorney: The Commission never sued saying we’ve ceded nuisance. They sued saying—
“Justice Aaron: Yeah, but the City did ask for a declaration that it was legitimately exercising its nuisance abatement.
“City Attorney: And the court said—Surfrider said it wasn’t a nuisance. The court agreed that it wasn’t a nuisance. The court said it’s a rational basis standard as to whether it was a nuisance or not. The question of is it nuisance or development, which is kind of the issue that the . . . case throws out there you were inquiring about before, would really be a factual inquiry, and that factual inquiry never occurred.
“Justice Benke: That’s why I asked about the record. Where do we go for a record on that question?
“City Attorney: That question was never addressed. We certainly never argued it before the trial court because it never came up in the context of this case.”
As I read these remarks, counsel makes it fairly clear that in the City’s action against the Commission, the validity of the ordinance was not litigated but that the issue was fully considered in the Surfrider action.
I also note that at oral argument, the Commission’s counsel suggested if we affirm the trial court’s order in Surfrider, the jurisdictional question we consider in the City’s case would be moot.

 In light of Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles (2012) 55 Cal.4th 783, 794, 810-811 [149 Cal.Rptr.3d 383, 288 P.3d 717] {Pacific Palisades), it is now clear a municipality’s local coastal program is itself a provision of the Coastal Act. In Pacific Palisades, the fact a local coastal program was part of the Coastal Act meant that the provisions of a local coastal program were not preempted by another state law, Government Code section 66427.5. (Pacific Palisades, at pp. 810-811.) Here, because the City’s local coastal program, including the prohibition on gates, is also a part of the Coastal'Act, like all the other provisions of the Coastal Act, the program is subject to the limitations of section 30005.

 If, of course, the majority does not mean to give such power over the validity of ordinances to the Commission, for the guidance of the Commission and municipalities within the geographic jurisdiction of the Commission, the majority should more fully articulate what power municipalities continue to have over the enactment and enforcement of nuisance ordinances.